1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11

JASON SCOTT HAYHURST,

)   Case No. EDCV 12-672 JC

12

Plaintiff,

)
)
)   MEMORANDUM OPINION

13

v.

)
)

14
15

MICHAEL J. ASTRUE,
Commissioner of Social

)
)
)

16

Security,

)
)

17

Defendant.

)

18

_____

19   **I.     SUMMARY**

20          On May 10, 2012, plaintiff Jason Scott Hayhurst ("plaintiff") filed a

21   Complaint seeking review of the Commissioner of Social Security's denial of

22   plaintiff's application for benefits.  The parties have consented to proceed before a

23   United States Magistrate Judge.

24          This matter is before the Court on the parties' cross motions for summary

25   judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

26   Court has taken both motions under submission without oral argument.  See Fed.

27   R. Civ. P. 78; L.R. 7-15; May 11, 2012 Case Management Order ¶ 5.

28

1       Based on the record as a whole and the applicable law, the decision of the

2  Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3  ("ALJ") are supported by substantial evidence and are free from material error.[1]

4  ## II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE

5        DECISION

6       On January 2, 2009, plaintiff filed an application for Disability Insurance

7  Benefits.  (Administrative Record ("AR") 9, 153).  On January 29, 2009, plaintiff

8  filed an application for Supplemental Security Income.  (AR 9, 146).  Plaintiff

9  asserted that he became disabled on August 20, 2008, due to depression.  (AR

10  166-67).  The ALJ examined the medical record and heard testimony from plaintiff

11  (who was represented by counsel) and a vocational expert on October 21, 2010.

12  (AR 21-45).

13       On February 25, 2011, the ALJ determined that plaintiff was not disabled

14  through the date of the decision.  (AR 9-17).  Specifically, the ALJ found:

15  (1) plaintiff suffered from the following severe impairments:  polysubstance abuse,

16  in remission; psychotic disorder, not otherwise specified ("NOS"); and a

17  depressive disorder, NOS (AR 11); (2) plaintiff's impairments, considered singly

18  or in combination, did not meet or medically equal a listed impairment (AR 12);

19  (3) plaintiff retained the residual functional capacity to perform a full range of

20  work at all exertional levels with the additional nonexertional limitation that

21  plaintiff was limited to entry level work in a non-public setting (AR 12);

22  (4) plaintiff could perform his past relevant work as a warehouse worker and

23  bottling line attendant (AR 16-17); and (5) plaintiff's allegations regarding his

24  ///

25

26        [1]The harmless error rule applies to the review of administrative decisions regarding

27  disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of application of harmless error standard in social security cases) (citing, *inter alia*, Stout v.

28  Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

1  limitations were not credible to the extent they were inconsistent with the ALJ's
2  residual functional capacity assessment (AR 13).

3      The Appeals Council denied plaintiff's application for review.  (AR 1).

4  **III.   APPLICABLE LEGAL STANDARDS**

5      **A.   Sequential Evaluation Process**

6      To qualify for disability benefits, a claimant must show that the claimant is
7  unable "to engage in any substantial gainful activity by reason of any medically
8  determinable physical or mental impairment which can be expected to result in
9  death or which has lasted or can be expected to last for a continuous period of not
10 less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)
11 (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The
12 impairment must render the claimant incapable of performing the work claimant
13 previously performed and incapable of performing any other substantial gainful
14 employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094,
15 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

16      In assessing whether a claimant is disabled, an ALJ is to follow a five-step
17 sequential evaluation process:

18      (1)   Is the claimant presently engaged in substantial gainful activity?  If
19            so, the claimant is not disabled.  If not, proceed to step two.

20      (2)   Is the claimant's alleged impairment sufficiently severe to limit
21            the claimant's ability to work?  If not, the claimant is not
22            disabled.  If so, proceed to step three.

23      (3)   Does the claimant's impairment, or combination of
24            impairments, meet or equal an impairment listed in 20 C.F.R.
25            Part 404, Subpart P, Appendix 1?  If so, the claimant is
26            disabled.  If not, proceed to step four.

27 ////
28 ///

3

(4)     Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

4

1  evidence that detracts from the [Commissioner's] conclusion.'" Aukland v.

2  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

3  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

4  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

5  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

6  **IV.   DISCUSSION**

7  **A.    The ALJ Properly Evaluated the Severity of Plaintiff's Physical**

8  **Impairments**

9  **1.    Pertinent Law**

10  At step two of the sequential evaluation process, plaintiff has the burden to

11  present evidence of medical signs, symptoms and laboratory findings[2] that

12  establish a medically determinable physical or mental impairment that is severe,

13  and that can be expected to result in death or which has lasted or can be expected

14  to last for a continuous period of at least twelve months.  Ukolov v. Barnhart, 420

15  F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3),

16  1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1520, 416.920.  Substantial evidence

17  supports an ALJ's determination that a claimant is not disabled at step two where

18  "there are no medical signs or laboratory findings to substantiate the existence of a

19  medically determinable physical or mental impairment."  Id. (quoting SSR 96-4p).

20  Step two is "a de minimis screening device [used] to dispose of groundless

21  claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Applying the

22  normal standard of review to the requirements of step two, a court must determine

23  whether an ALJ had substantial evidence to find that the medical evidence clearly

24  _____

25  [2]A medical "sign" is "an anatomical, physiological, or psychological abnormality that can
be shown by medically acceptable clinical and laboratory diagnostic techniques[.]"  Ukolov v.

26  Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-4p).
A "symptom" is "an individual's own perception or description of the impact of his or her

27  physical or mental impairment(s)[.]"  Id. (quoting SSR 96-4p); see also 20 C.F.R.

28  §§ 404.1528(a)-(b), 416.928(a)-(b).

5

1   established that the claimant did not have a medically severe impairment or

2   combination of impairments.  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)

3   (citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)

4   ("Despite the deference usually accorded to the Secretary's application of

5   regulations, numerous appellate courts have imposed a narrow construction upon

6   the severity regulation applied here.").  An impairment or combination of

7   impairments can be found "not severe" only if the evidence establishes a slight

8   abnormality that has "no more than a minimal effect on an individual's ability to

9   work."  Webb, 433 F.3d at 686 (citation omitted).

10                  **2.    Analysis**

11          Plaintiff contends that reversal or remand is warranted because the ALJ

12   failed to find plaintiff's "cardiac condition" and "asthmatic condition" severe

13   physical impairments at step two of the sequential evaluation process.  (Plaintiff's

14   Motion at 2-3).  The Court disagrees.

15          The record medical evidence clearly supports the ALJ's determination at

16   step two that plaintiff's purported cardiac and asthmatic conditions were not

17   severe impairments.  As the ALJ noted, and as plaintiff points out, on August 27,

18   2010, plaintiff sought treatment at the Arrowhead Regional Medical Center

19   ("Arrowhead") emergency room for shortness of breath.  (AR 14, 270).  X-rays

20   taken of plaintiff's chest at the Arrowhead emergency room revealed "mild

21   cardiomegaly with prominence of the interstitial markings" and findings consistent

22   with "vascular congestion."  (AR 282).  An electrocardiogram showed "left atrial

23   enlargement" and "sinus tachycardia."  (AR 14, 284).  Arrowhead medical records

24   reflect that plaintiff's shortness of breath was "resolved" and his condition

25   stabilized with treatment in the emergency room.  (AR 275, 270-86).  Physicians

26   noted that plaintiff's cardiomyopathy was "due to drug abuse" and that plaintiff

27   was strongly advised to stop drinking and using drugs.  (AR 275).  The ALJ noted

28   that "there is no evidence of further exacerbation of congestive heart failure or

6

1  shortness of breath." (AR 14).  Although plaintiff contends the foregoing

2  evidence shows that his cardiac and respiratory conditions had more than a

3  minimal effect on an individual's ability to work, the Court will not second guess

4  the ALJ's reasonable determination to the contrary.  See Robbins, 466 F.3d at 882.

5          Accordingly, a remand or reversal on this basis is not warranted.

6      **B.    The ALJ Properly Evaluated the Medical Evidence of Plaintiff's**

7              **Mental Impairments**

8          **1.    Pertinent Law**

9          In Social Security cases, courts employ a hierarchy of deference to medical

10  opinions depending on the nature of the services provided.  Courts distinguish

11  among the opinions of three types of physicians:  those who treat the claimant

12  ("treating physicians") and two categories of "nontreating physicians," namely

13  those who examine but do not treat the claimant ("examining physicians") and

14  those who neither examine nor treat the claimant ("nonexamining physicians").

15  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

16  treating physician's opinion is entitled to more weight than an examining

17  physician's opinion, and an examining physician's opinion is entitled to more

18  weight than a nonexamining physician's opinion.[3]  See id.  In general, the opinion

19  of a treating physician is entitled to greater weight than that of a non-treating

20  physician because the treating physician "is employed to cure and has a greater

21  opportunity to know and observe the patient as an individual."  Morgan v.

22  Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

23  1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

24  ///

25

26          [3]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to
27  draw bright line distinguishing treating physicians from non-treating physicians; relationship is
    better viewed as series of points on a continuum reflecting the duration of the treatment
28  relationship and frequency and nature of the contact) (citation omitted).

1    The treating physician's opinion is not, however, necessarily conclusive as

2    to either a physical condition or the ultimate issue of disability.  Magallanes v.

3    Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

4    759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not

5    contradicted by another doctor, it may be rejected only for clear and convincing

6    reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

7    quotations omitted).  The ALJ can reject the opinion of a treating physician in

8    favor of another conflicting medical opinion if the ALJ makes findings setting

9    forth specific, legitimate reasons for doing so that are based on substantial

10   evidence in the record.  Id. (citation and internal quotations omitted); Thomas v.

11   Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out

12   detailed and thorough summary of facts and conflicting clinical evidence, stating

13   his interpretation thereof, and making findings) (citations and quotations omitted);

14   Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to

15   reject a treating physician opinion – court may draw specific and legitimate

16   inferences from ALJ's opinion).  "The ALJ must do more than offer his

17   conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must

18   set forth his own interpretations and explain why they, rather than the

19   [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the

20   treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599,

21   602 (9th Cir. 1989).

22          **2.    GAF Scores**

23          Plaintiff contends that a remand or reversal is warranted because the ALJ

24   failed properly to consider the low GAF scores assigned by San Bernardino

25   County Department of Behavioral Health ("San Bernardino Clinic") providers –

26   Dr. Marcia Hudson, Dr. Han Nguyen, and social worker, Donald Neely.

27   (Plaintiff's Motion at 3-4) (citing AR 210, 216, 252).  The Court disagrees.

28   ///

1    Here, the ALJ properly gave little weight to the GAF scores assigned by the
2  San Bernardino Clinic providers.  Contrary to plaintiff's suggestion, GAF scores,
3  standing alone, are not determinative of the severity of mental impairments for
4  purposes of social security disability claims.  See 65 Fed. Reg. 50746, 50764-65
5  (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the
6  severity requirements in our mental disorder listings."); McFarland v. Astrue, 288
7  Fed. Appx. 357, 359 (9th Cir. 2008)[4] (ALJ's failure to address GAF scores
8  specifically did not constitute legal error); see also Purvis v. Commissioner of
9  Social Security Administration, 57 F. Supp. 2d 1088, 1093 (D. Or. 1999) (noting
10 absence of Ninth Circuit authority presented to suggest that GAF score of 50, by
11 itself, required finding of disability); Howard v. Commissioner of Social Security,
12 276 F.3d 235, 241 (6th Cir. 2002) (rejecting claimant's argument that ALJ
13 improperly failed to consider GAF score in assessing residual functional capacity).
14    Accordingly, a remand or reversal on this basis is not warranted.
15         **3.    Dr. H. Amado**
16    On April 8, 2009, Dr. H. Amado reviewed the medical evidence in
17 plaintiff's file and completed a Mental Residual Functional Capacity Assessment
18 form ("April 8 form").  In the "Summary Conclusions" section of the April 8 form,
19 Dr. Amado checked a box under the sub-section entitled "Sustained Concentration
20 and Persistence" which indicated that plaintiff was moderately limited in his
21 "ability to complete a normal work day and workweek without interruptions from
22 psychologically based symptoms and to perform at a consistent pace without an
23 unreasonable number and length of rest periods."  (AR 236).  (Plaintiff's Motion
24 at 4-5).  In the Functional Capacity Assessment section of the April 8 form, Dr.
25 Amado opined that plaintiff retained adequate function to do simple, repetitive
26 tasks in a non-public setting.  (AR 237).

27

28    [4]Courts may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.
See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

1    Plaintiff contends that a remand or reversal is warranted because the ALJ
2    failed properly to consider Dr. Amado's opinions.  More specifically, plaintiff
3    argues that the ALJ erred by failing expressly to mention Dr. Amado's opinion
4    regarding plaintiff's moderate limitation in the ability to complete a normal work
5    day and workweek without interruptions from plaintiff's symptoms.  (Plaintiff's
6    Motion at 4-5) (citing AR 236).  The Court disagrees.

7    First, simply because the ALJ did not expressly reference the individual
8    moderate mental limitation expressed in the April 8 form does not mean he failed
9    to consider such evidence.  See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)
10   ("An ALJ's failure to cite specific evidence does not indicate that such evidence
11   was not considered[.]").  The ALJ was not required to discuss every piece of
12   evidence in the record.  See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir.
13   2003) (citations omitted).  Here, the ALJ noted that Dr. Amado "determined that
14   [plaintiff] had severe mental impairments . . . which caused . . . moderate
15   limitations in . . . concentration, persistence or pace." (AR 16) (citing, *inter alia*,
16   Exhibit 4F [AR 235-37]) (emphasis added).  This was sufficient.

17   Second, the ALJ properly accounted for any specific limitation in
18   concentration and persistence noted in the Summary Conclusions section of the
19   April 8 form by expressly adopting Dr. Amado's overall opinion stated in the
20   form's Functional Capacity Assessment section (*i.e.*, that plaintiff's impairments
21   "did not preclude the performance of simple, repetitive tasks in a non-public
22   setting").  (AR 16) (Exhibit 4F at 2 [AR 237]).  The ALJ was entitled to rely on
23   Dr. Amado's overall functional capacity assessment rather than the underlying,
24   check-the-box summary conclusions, and to resolve any ambiguity between the
25   two.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (ALJ resolves
26   conflicts and ambiguities in the evidence); Reddick v. Chater, 157 F.3d 715, 722-
27   23 (9th Cir. 1998) (ALJ must "fully account[] for the context of materials or all
28   parts of the testimony and reports"); Murray v. Heckler, 722 F.2d 499, 501 (9th

10

1  Cir. 1983) (expressing preference for individualized medical opinions over check-

2  off reports).

3        Finally, although plaintiff suggests that the totality of medical opinion

4  evidence in the record – specifically, Dr. Amado's April 8 opinions (AR 235-37),

5  the GAF scores assigned by San Bernardino Clinic Drs. Hudson and Nguyen (AR

6  210, 216, 252), and Mr. Neely's opinion that plaintiff would be expected to miss

7  more than four days per month (AR 248) – reflects that plaintiff's psychologically

8  based symptoms would preclude him from doing any work (Plaintiff's Motion at

9  5), the Court will not second-guess the ALJ's finding to the contrary.  Again, the

10  ALJ properly rejected the GAF scores and adequately accounted for plaintiff's

11  moderate mental limitations found by Dr. Amado.  Moreover, as the ALJ noted,

12  the September 20, 2012 Mental Residual Functional Capacity form prepared by

13  Mr. Neely (AR 243-48) is not an acceptable source of medical evidence, as the

14  social worker is neither a physician nor a licensed psychologist.  (AR 16); see 20

15  C.F.R. §§ 404.1513(a), 416.913(a) (listing acceptable medical sources).

16        Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

17        **C.    The ALJ Properly Evaluated Plaintiff's Credibility**

18              **1.    Pertinent Law**

19        Questions of credibility and resolutions of conflicts in the testimony are

20  functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th

21  Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable

22  and is supported by substantial evidence, it is not the court's role to "second-

23  guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

24        An ALJ is not required to believe every allegation of disabling pain or other

25  non-exertional impairment.  Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d

26  597, 603 (9th Cir. 1989)).  If the record establishes the existence of a medically

27  determinable impairment that could reasonably give rise to symptoms assertedly

28  suffered by a claimant, an ALJ must make a finding as to the credibility of the

1  claimant's statements about the symptoms and their functional effect.  <u>Robbins</u>,

2  466 F.3d 880 at 883 (citations omitted).  Where the record includes objective

3  medical evidence that the claimant suffers from an impairment that could

4  reasonably produce the symptoms of which the claimant complains, an adverse

5  credibility finding must be based on clear and convincing reasons.  <u>Carmickle v.</u>

6  <u>Commissioner, Social Security Administration</u>, 533 F.3d 1155, 1160 (9th Cir.

7  2008) (citations omitted).  The only time this standard does not apply is when

8  there is affirmative evidence of malingering.  <u>Id.</u>  The ALJ's credibility findings

9  "must be sufficiently specific to allow a reviewing court to conclude the ALJ

10  rejected the claimant's testimony on permissible grounds and did not arbitrarily

11  discredit the claimant's testimony."  <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th

12  Cir. 2004).

13       To find the claimant not credible, an ALJ must rely either on reasons

14  unrelated to the subjective testimony (<i>e.g.</i>, reputation for dishonesty), internal

15  contradictions in the testimony, or conflicts between the claimant's testimony and

16  the claimant's conduct (<i>e.g.</i>, daily activities, work record, unexplained or

17  inadequately explained failure to seek treatment or to follow prescribed course of

18  treatment).  <u>Orn</u>, 495 F.3d at 636; <u>Robbins</u>, 466 F.3d at 883; <u>Burch</u>, 400 F.3d at

19  680-81; SSR 96-7p.  Although an ALJ may not disregard such claimant's

20  testimony solely because it is not substantiated affirmatively by objective medical

21  evidence, the lack of medical evidence is a factor that the ALJ can consider in his

22  credibility assessment.  <u>Burch</u>, 400 F.3d at 681.

23            **2.    Analysis**

24       Plaintiff contends that the ALJ inadequately evaluated the credibility of his

25  subjective complaints.  (Plaintiff's Motion at 6-8).  The Court disagrees.

26       First, the ALJ properly discredited plaintiff's subjective complaints as

27  inconsistent with plaintiff's daily activities and other conduct.  <u>See</u> <u>Thomas</u>, 278

28  F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's

1    conduct supported rejection of the claimant's credibility); <u>Verduzco v. Apfel</u>,188

2    F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony

3    and actions cited as a clear and convincing reason for rejecting the claimant's

4    testimony).  For example, as the ALJ noted, contrary to plaintiff's allegations of

5    disabling symptoms, during a psychological evaluation plaintiff reported that at

6    his sober living home, he (i) wakes up at 7:00 a.m., prepares for his day and does

7    chores; (ii) cleans his room, watches television, eats and naps during the day; (iii)

8    does his own laundry, has no problem dressing himself, cooks meals and makes

9    snacks; (iv) has no problems cleaning and bathing himself regularly; and (v) is

10   able to use public transportation.  (AR 287, 289).  At the hearing plaintiff testified

11   that he is responsible for certain chores at the sober living home (*i.e.*, cleaning the

12   living room).  (AR 32).  As the ALJ also noted, contrary to plaintiff's complaint of

13   an inability to concentrate, plaintiff was able to complete a four-page medical

14   history questionnaire and social security forms without assistance.  (AR 15, 176-

15   83, 287).

16        Second, the ALJ properly discredited plaintiff's subjective complaints due

17   to internal conflicts within plaintiff's own statements and his conduct.  <u>See</u> <u>Light</u>

18   <u>v. Social Security Administration</u>, 119 F.3d 789, 792 (9th Cir.), <u>as</u> <u>amended</u>

19   (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies

20   either in [plaintiff's] testimony or between his testimony and his conduct").  For

21   example, as the ALJ noted, contrary to plaintiff's complaint that he has anger

22   management problems (*i.e.*, "unexplained fits of anger") (AR 288), plaintiff

23   testified that he lived in a sober living house with up to three roommates at a time,

24   yet had no interpersonal problems at that facility.  (AR 15, 32-33).  As the ALJ

25   also noted, although on June 15, 2010, plaintiff told Dr. Nguyen that he had been

26   drug and alcohol free for nine months, on August 27, 2010, the emergency room

27   physician at Arrowhead strongly advised plaintiff to stop drinking and using

28   drugs.  (AR 14, 259, 278).  The ALJ reasonably questioned "whether [plaintiff

13

had] refrained from using drugs and alcohol for as long as he [had] alleged." (AR 14).

Finally, an ALJ may properly consider a plaintiff's failure to "seek treatment or to follow a prescribed course of treatment" in assessing credibility. See Smolen, 80 F.3d at 1284. Here, as the ALJ noted, treatment records reflect plaintiff's poor compliance with taking prescribed medication. (AR 14) (citing Exhibit 1F at 6 [AR 213], 8F at 9 [AR 257], 8F at 10 [AR 258]). While an ALJ may not reject symptom testimony where a claimant provides "evidence of a good reason for not taking medication," Smolen, 80 F.3d at 1284 (citations omitted), plaintiff has not presented such a sufficient reason in this case.

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

## D.   The ALJ Did Not Materially Err at Step Four In Determining that Plaintiff Could Perform His Past Relevant Work

### 1.   Pertinent Law

At step four of the sequential evaluation process, the Administration may deny benefits when the claimant can perform the claimant's past relevant work as "actually performed," or as "generally" performed. Pinto v. Massanari, 249 F.3d 840, 845 (2001). Social Security regulations define past relevant work as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn it." (20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1)).

"Substantial gainful activity is work done for pay or profit that involves significant mental or physical activities." Lewis, 236 F.3d at 515 (citing 20 C.F.R. §§ 404.1571-404.1572 & 416.971-416.975). The primary factor used to determine whether a claimant was engaged in substantial gainful activity ("SGA") at a particular job is the amount of earnings a claimant derived from the job. Le v. Astrue, 540 F. Supp. 2d 1144, 1149 (C.D. Cal. 2008) (citing 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1)). "There is a rebuttable presumption that the

14

1  employee either was or was not engaged in SGA if his or her average monthly

2  earnings are above or below a certain amount established by the Commissioner's

3  Earnings Guidelines." Id. (citing 20 C.F.R. §§ 404.1574(b)(2)-(3), 416.974(b)(2)-

4  (3)); Lewis, 236 F.3d at 515 ("Earnings can be a presumptive, but not conclusive,

5  sign of whether a job is substantial gainful activity."). For example, an employee

6  is presumed to have engaged in work at an SGA level in a particular month if his

7  average monthly earnings exceeded $800 in 2003, $810 in 2004, or $830 in 2005.

8  See 20 C.F.R. §§ 404.1574(b)(2)(ii), 416.974(b)(2)(ii); Tables of SGA Earnings

9  Guidelines and Effective Dates Based on Year of Work Activity, Social Security

10 Administration Program Operation Manual System ("POMS")

11 § DI 10501.015(B).[5]

12       To be considered substantial gainful activity, a position must be held "for a

13 significant period of time." Gatliff v. Commissioner of the Social Security

14 Administration, 172 F.3d 690, 694 (9th Cir. 1999). Accordingly, a job which a

15 claimant holds only for *de minimis* periods of time does not constitute past

16 relevant work. Slack v. Astrue, 2011 WL 534049, *4 (E.D. Cal. Feb. 14, 2011)

17 (citations omitted); see, e.g., 20 C.F.R. §§ 404.1565(a) & 416.965(a) (work

18 claimant performed "off-and-on or for brief periods of time during the 15-year

19 period" not considered evidence of past relevant work); Gatliff, 172 F.3d at 694

20 (string of sequential two-month jobs does not constitute substantial gainful

21 activity); see also 20 C.F.R. §§ 404.1574(c), 416.974(c) (work performed for 3

22 months or less generally considered "unsuccessful work attempt"); SSR 84-25

23 (same).

24 ///

25 ///

26

27       [5]The POMS manual is considered persuasive authority, even though it does not carry the
28 "force and effect of law." Hermes v. Secretary of Health and Human Services, 926 F.2d 789,
   791 n.1 (9th Cir.), cert. denied, 502 U.S. 817 (1991).

### 2. Analysis

Here, plaintiff essentially contends that the ALJ's determination at step four – that plaintiff's past relevant work included the jobs of warehouse worker and bottling line attendant – was not supported by substantial evidence. (Plaintiff's Motion at 8-10). The Court concludes that the ALJ did not materially err in this respect.

First, substantial evidence supported the ALJ's determination that plaintiff's past relevant work included the position of warehouse worker. Plaintiff testified at the hearing that from 2003 to 2005 he performed "either warehouse work or fast food [work]." (AR 30-31). Plaintiff's DISCO DIB Insured Status Report reflects average monthly earnings during the same period of $1,484.30 for 2003 ($17,811.57 annually), $1,450.27 for 2004 ($17,403.18 annually), and $1,127.25 for 2005 ($13,526.96 per yr). (AR 160-61). Plaintiff does not rebut the presumption that such average monthly earnings were at SGA levels for the respective years. See 20 C.F.R. §§ 404.1574(b)(2)(ii), 416.974(b)(2)(ii); POMS § DI 10501.015(B). In addition, the vocational expert testified that plaintiff's past work included "warehouse worker" (DOT § 922.687-058). (AR 43). While plaintiff suggests that such evidence did not demonstrate that his past relevant work included the job of warehouse worker, the Court will not second-guess the ALJ's reasonable interpretation that it did, even if such evidence could give rise to inferences more favorable to plaintiff.

Second, as plaintiff and defendant essentially agree, substantial evidence does not support the ALJ's finding at step four that plaintiff's past relevant work included the job of "bottling attendant." (Plaintiff's Motion at 9; Defendant's Motion at 12). Nonetheless, in light of the ALJ's determination that plaintiff could do other past relevant work (*i.e.*, warehouse worker), any such error was inconsequential to the ALJ's ultimate nondisability determination, and therefore

16

1   does not warrant a reversal or remand.[6]  See Stout, 454 F.3d at 1055 (An ALJ's

2   error is harmless where it is "inconsequential to the ultimate nondisability

3   determination.").

4          Third, plaintiff argues that substantial evidence does not support the ALJ's

5   finding that plaintiff held the position of warehouse worker during any significant

6   period of time because it is "unclear from the record which occupations plaintiff

7   was performing" during years when plaintiff's earnings were at SGA levels.

8   (Plaintiff's Memo at 9-10).  Even if true, a reversal or remand is not warranted on

9   such a basis.  At step four the burden to prove disability (i.e., that there was no

10  past relevant work which plaintiff could do) rested squarely with plaintiff.  See

11  Bustamante, 262 F.3d at 953-54 (citation omitted).  Thus, to the extent the record

12  did not adequately reflect plaintiff's employment history, it was plaintiff's

13  obligation to remedy this deficiency.

14         Finally, the Court rejects plaintiff's argument that the ALJ failed properly to

15  develop the record "pertaining to [] plaintiff's past work activity."  (Plaintiff's

16  Motion at 10).  Although plaintiff bears the burden of proving disability, the ALJ

17  has an affirmative duty to assist the claimant in developing the record "when there

18  is ambiguous evidence or when the record is inadequate to allow for proper

19  evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir.

20  2001) (citation omitted); Bustamante, 262 F.3d at 954; see also Webb, 433 F.3d at

21  687 (ALJ has special duty fully and fairly to develop record and to assure that

22  claimant's interests are considered).  Here, even assuming the record of plaintiff's

23  past work activity was ambiguous, the ALJ held the record open for 30 days after

24  the end of plaintiff's administrative hearing.  (AR 44).  This was sufficient to

25

26         [6]At one point, the ALJ erroneously states in the decision that plaintiff could perform his
    past relevant work as a "fast food worker."  (AR 17).  Although plaintiff does not raise the issue,
27  the Court nonetheless notes that any error in this respect was harmless.  When viewed in the
    context of the entire decision, the ALJ's reference to the position of "fast food worker" in his
28  analysis at step four was clearly a scrivener's error.

                                            17

1  satisfy any duty the ALJ had to fully and fairly to develop the record.  See Tidwell
2  v. Apfel, 161 F.3d 599, 602 (9th Cir 1998) (ALJ satisfied duty fully and fairly to
3  develop record by keeping record open after hearing to allow supplementation of
4  record); see also Smolen, 80 F.3d at 1288 (ALJ may discharge duty fully and fairly
5  to develop record in several ways, including:  subpoenaing claimant's physicians,
6  submitting questions to claimant's physicians, and continuing hearing to augment
7  record).
8          Accordingly, plaintiff is not entitled to a reversal or remand on this basis.
9  **V.      CONCLUSION**
10         For the foregoing reasons, the decision of the Commissioner of Social
11 Security is affirmed.
12         LET JUDGMENT BE ENTERED ACCORDINGLY.
13 DATED:  October 18, 2012

14                                    _____/s/_____
15                                    Honorable Jacqueline Chooljian
16                                    UNITED STATES MAGISTRATE JUDGE
17
18
19
20
21
22
23
24
25
26
27
28